1

2

3

4                                   UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7      TOMMY GALIA,                                    Case No. 19-cv-08156-JCS
                       Plaintiff,
8                                                      **ORDER DENYING MOTION TO**
              v.                                       **DISMISS PLAINTIFF'S COMPLAINT**
9                                                      **PURSUANT TO FEDERAL RULE OF**
       WASATCH ADVANTAGE GROUP LLC,                    **CIVIL PROCEDURE 12(B)(6), OR IN**
10     et al.,                                         **THE ALTERNATIVE, 12(B)(2) AND**
                                                       **12(B)(5)**
11                     Defendants.
                                                       Re: Dkt. No. 31

12

13     **I.      INTRODUCTION**

14            Plaintiff Tommy Galia, proceeding pro se, brings this action against Defendants Wasatch

15     Advantage Group LLC ("Wasatch"), Chris Doe, and Alicia Cortes, as well as ten individuals

16     identified only as Does 1–10.  Galia asserts a single claim for violation of the Fair Housing Act

17     ("FHA") under 42 U.S.C. § 3617.  Presently before the Court is Defendants' Motion to Dismiss

18     Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the Alternative,

19     12(b)(2) and 12(b)(5) ("Motion").  A hearing on the Motion was held on April 16, 2021 at 9:30

20     a.m.   Counsel for Defendants appeared at the motion hearing but Mr. Galia did not.  For the

21     reasons set forth below, the Motion is DENIED.[1]  As set forth in the Court's separate order, a Case

22     Management Conference will be conducted by Zoom on May 28, 2021 at 2:00 p.m.  to address the

23     possibility of mediation of this action.

24

25

26

27

28     _____
       [1] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to
       28 U.S.C. § 636(c).

United States District Court
Northern District of California

Case 3:19-cv-08156-JCS   Document 47   Filed 04/16/21   Page 2 of 13


United States District Court
Northern District of California

## II.   BACKGROUND

### A.   The Complaint[2]

Galia alleges that he is an "individual with a 'handicap' as defined by the Fair Housing Act."  Complaint ¶ 8 (quoting 42 U.S.C. § 3602(h)).  He has a "deformed left ankle and mental health issues," and has multiple prescriptions for insomnia, depression, and nightmares.  *Id.*  His ability to walk and engage in social interaction is "substantially limited."  *Id.*  During the relevant period, Galia received monthly social security disability payments ("SSDI") on the second Wednesday of the month.  *Id.*

On or about September 1, 2012, Galia entered into a lease agreement for apartment 204 at the Hayward Senior Village Apartments.  *Id.* ¶ 9, Ex. A (Residential Rental Agreement).   Under the agreement, rent was due at the beginning of the month and a late charge was to be assessed in the event rent was not paid by the third day of the month.  *Id.*, Ex. A, Section VII.  Galia alleges that in 2012, he made a verbal "reasonable accommodation request" to Chris Doe to pay rent after he received his monthly social security disability check.[3]  *Id.* ¶ 10.  Galia made this request to avoid incurring the $50.00 late fee.  *Id.*  Chris Doe agreed to "give [him] a break [on] the [$]50.00 late fee."  *Id.* (internal quotation marks omitted).  Galia, in turn, "would pay an extra $50.00 towards the rent" "[t]o avoid future late fees."  *Id.*

On or about August 1, 2014, a Wasatch employee referred to in the complaint as John Doe, was sent to investigate residents' accounts, including Galia's, for embezzlement by "Management."  *Id.* ¶ 11.  The next day, Galia was asked to bring his "money order receipts" to an investigative interview.  *Id.* ¶ 12.  Galia again made a "reasonable request" to pay rent on the second Wednesday of the month.  *Id.*  The Wasatch employee denied his request, telling Galia that

---

[2]Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this order summarizes the Plaintiff's allegations as if true.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Nothing in this order should be construed as resolving any issues of fact that might be disputed at a later stage of the case.
[3]There is a discrepancy in the Complaint.  Galia alleges that he made the request to Chris Doe in February 2012, Complaint ¶ 10, but he did not sign the lease for the apartment until September 1, 2012, *id.* ¶ 9, Ex. A (Residential Rental Agreement).  The Court assumes Galia intended to allege that he made the request for accommodation to Chris Doe in February 2013.  Regardless, this discrepancy does not impact the Court's ruling on the Motion.

United States District Court
Northern District of California

1    "if I did that for you then I would have to do that for everyone else." *Id.* (internal quotation marks

2    omitted).  Two weeks later, Galia's account was credited approximately $700.00 without

3    explanation from "Management." *Id.* ¶ 13.

4         Between September 2014 and October 2017, Galia was late on rent 22 out of 38 months.

5    *Id.* ¶ 14.  He was "not always charged a late fee" because it was at Defendants' discretion. *Id.*  On

6    October 13, 2017, Galia was served a summons and complaint for unlawful detainer by Wasatch.

7    *Id.* ¶ 15, Ex. B (Summons and Complaint for Unlawful Detainer and Three-Day Notice to Pay

8    Rent or Quit).  On November 29, 2017, Galia signed a stipulation order, which was drafted by

9    Defendants' attorney, to pay the outstanding balance of $2,814.99 and vacate the apartment. *Id.*

10   ¶ 16, Ex. C (Stipulation Order to Pay and Vacate ("Stipulation")).  On December 4, 2017, Galia

11   spoke with Alicia Cortes, the Hayward Senior Village Apartments Manager, to inform her about

12   "mistakes" regarding payment dates in the Stipulation, which specified that the first payment

13   would be due on December 6, 2017. *Id.*  ¶ 17.  Galia requested a "reasonable accommodation" to

14   pay his first installment on the eighth of the month, when he would receive his SSDI payment. *Id.*

15   Alicia Cortes declined his request and said, "[T]o[o] bad you signed it." *Id.* (internal quotation

16   marks omitted).  On December 21, 2017, a writ of possession for apartment 204 was issued in

17   favor of Wasatch by the Superior Court of California, County of Alameda. *Id.* ¶ 19, Ex. D (Writ

18   of Possession).

19        In his Complaint, Galia asserts a single claim for violation of 42 U.S.C. § 3617 of the

20   B. FHA. *Id.* ¶¶ 20–22.  Galia alleges that as a result of Defendants' discriminatory conduct he is an

21   "aggrieved party" as defined by 42 U.S.C. § 3602(i). *Id.* ¶¶ 21–22.

22        **Service**

23        When he filed his Complaint, on December 16, 2019, Plaintiff also filed an application to

24   proceed in forma pauperis.  On December 18, 2019, the Court granted that application and ordered

25   the United States Marshal to serve the complaint. *See* Dkt. Nos. 2, 6.  On January 14, 2020, the

26   United States Marshal acknowledged receipt of the summons.  Dkt. No. 10.  On May 18, 2020,

27   Plaintiff asked the Court to extend the deadline for service to June 16, 2020 because the Marshal

28   had not yet served the summons and complaint – though he did not have an obligation to do so as

3

1    the Court had already ordered service by the Marshal – and the Court granted that request.  Dkt.

2    Nos. 13, 14. The Court then issued a second order instructing the United States Marshal to serve

3    the complaint. Dkt. No. 18. On August 7, 2020, the Marshal attempted to serve Defendants at

4    Hayward Senior Village but the office was locked and no one answered the telephone.  Dkt. No.

5    22.  On September 21, 2020 the Court issued a third order for service, requiring the Marshal to

6    serve the complaint on Wasatch at an address in Utah.  Dkt. 27.  The Marshal successfully served

7    the complaint at that address on November 17, 2020.

8              **The Motion**

9              In the Motion, Defendants asks the Court to dismiss the Complaint under Rule 12(b)(6),

10   arguing that Galia has not alleged any discriminatory conduct by Defendants.  Motion at 5–7.

11   Defendants contend that 42 U.S.C. § 3617 "prohibits discriminatory conduct designed to drive an

12   individual out of his or her home but does not reach conduct that merely interferes with [an]

13   individual's enjoyment of his or her home."  *Id.* at 6 (citing *Egan v. Schmock*, 93 F. Supp. 2d

14   1090, 1093 (N.D. Cal. 2000); *Taal v. Zwirner*, No. CIV. 02-131-M, 2004 WL 556709 (D.N.H.

15   Mar. 22, 2004), aff'd, 117 F. App'x 775 (1st Cir. 2005)).  Defendants do not dispute that Galia is

16   handicapped but contend the Complaint is "devoid of any allegations that Defendants performed

17   any discriminatory conduct" or that "Defendants acted against Plaintiff's enjoyment of the subject

18   premises on account of his handicap."  *Id.*  According to Defendants, Galia "acknowledges that he

19   was given an accommodation to pay rent on the second Wednesday of the month."  *Id.* (citing

20   Complaint ¶ 10).[4]   Defendants further assert that the documentary evidence attached to the

21   Complaint shows that the reason Galia was evicted was his failure to pay his outstanding rent

22   balance rather than any discriminatory intent.  *Id.* at 7.

23              Defendants also argue the Complaint should be dismissed under Rule 12(b)(6) because it is

24   apparent from the face of the complaint that Galia's FHA claim is barred by the applicable statute

25   of limitations.  *Id.* at 7.  According to Defendants, Galia was required to commence his civil action

26

27   ────────────────

28   [4]Defendants mischaracterize the allegations in the complaint, however, by ignoring the allegations
     in paragraphs 12 and 17 that Defendants denied Galia's requests to pay rent on the eighth day of
     the month on two other occasions.

United States District Court
Northern District of California

1    not later than two years from the occurrence or the termination of any alleged discriminatory

2    housing practice by Defendants.  *Id.* (citing 42 U.S.C. § 3613(a)(1)(A)).  Defendants argue that

3    because Galia filed his Complaint on December 16, 2019, the "termination of Defendants'

4    discriminatory housing practices must [have] occurred on or after December 16, 2017 for [Galia's]

5    FHA claim to be timely." *Id.* at 7–8.  Defendants argue the Complaint fails to allege

6    discriminatory conduct after December 16, 2017 and point to Galia's own admission that he

7    signed a stipulation on November 29, 2017 to pay the outstanding rent and vacate the premises.

8    *Id.* at 8.

9            In the alternative, Defendants argue that dismissal is warranted for lack of personal

10    jurisdiction  and defective service under Rule 12(b)(2) and (b)(5) because Galia failed to serve

11    Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.  *Id.*  In particular,

12    Defendants argue that Galia was required under Rule 4(m) to serve the complaint within ninety

13    days of filing the Complaint but did not serve Defendants until almost a full year later, on

14    November 17, 2020. *Id.*[5]  Defendants contend there is no personal jurisdiction because "a federal

15    court is without personal jurisdiction over a defendant unless the defendant has been served in

16    accordance with FRCP 4." *Id.* (citing *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d

17    1132, 1135 (9th Cir. 2009)).

18            Galia did not file an opposition.

A.

19    **III.    ANALYSIS**

20            **Whether there is Personal Jurisdiction Under Rule 12(b)(2) and (b)(5)**

21            Although Defendants bring their jurisdictional challenge as an alternative to their Rule

22    12(b)(6) challenges, the Court must resolve the question of personal jurisdiction before it can

23    reach the merits.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143

24    L.Ed.2d 760 (1999) ("[J]urisdiction generally must precede merits in dispositional order.");

25

26    ───────────────────
27    [5]Defendants also state that there was an attempt to serve the Complaint on September 22, 2020,
      but argue it still fell outside the ninety-day window.  *Id.*  In fact, the docket sheet reflects that a
      summons and service packet were received by the U.S. Marshal from the Clerk on September 22,
28    2020.  There is no evidence in the record that there was an attempt to serve Defendants on that
      date.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Bugarin v. All Nippon Airways Co.*, No. 20-CV-03341-BLF, 2021 WL 175940, at *2 (N.D. Cal.

2    Jan. 19, 2021) ("Only if the Court is satisfied that it has both subject matter jurisdiction and

3    personal jurisdiction may it proceed to address [the defendant's] merits arguments under Rule

4    12(b)(6)"). Defendants' assertion that the Court lacks personal jurisdiction over them because

5    service was improper has no merit.

6        Rule 4(m) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

7           (m) Time Limit for Service. If a defendant is not served within 90
           days after the complaint is filed, the court--on motion or on its own
8           after notice to the plaintiff--must dismiss the action without prejudice
           against that defendant or order that service be made within a specified
9           time. But if the plaintiff shows good cause for the failure, the court
           must extend the time for service for an appropriate period. . . .
10

11   Fed.R.Civ.P. 4(m).  Further, "[a] federal court is without personal jurisdiction over a defendant

12   unless the defendant has been served in accordance with Fed.R.Civ.P. 4." *Travelers Cas. & Sur.*

13   *Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (internal quotations and citation

14   omitted).

15        Here, Defendants contend there is no personal jurisdiction because the complaint was not

16   served within 90 days but do not address the fact that Rule 4(m) requires the Court to extend the

17   time for service where the plaintiff shows "good cause" for the delay.  The Court finds that there is

18   good cause to extend the deadline under the circumstances of this case.  As is apparent from the

19   discussion above, the length of time it took for the complaint to be served was a result of factors

20   beyond Plaintiff's control.  The Court further notes that Defendants fail to cite any authority

21   suggesting that delay in service by the Marshal requires dismissal for lack of personal jurisdiction

22   under Rule 4(m).  Indeed, Defendants do not acknowledge in the motion that Plaintiff was relieved

23   of the responsibility of serving the complaint when the Court ordered service by the United States

24   Marshal.

25        Therefore, the Court rejects Defendants' assertion that the Court lacks personal jurisdiction

26   over them under Rule 12(b)(2 and (b)(5).

27

28

1

2

**B.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**Whether Galia States a Claim Under Rule 12(b)(6)**

**1.   Legal Standard Under 12(b)(6)**

A complaint may be dismissed for failure to start a claim under which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action that will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 557.  Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010).  As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se,

1    particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the

2    benefit of any doubt." *Id.* at 342.  Nevertheless, the court may not "supply essential elements of

3    the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266,

4    268 (9th Cir. 1982).

5                            **2. Fair Housing Act Standards**

6          The FHA is "a comprehensive open housing law." *Jones v. Alfred H. Mayer Co.*, 392 U.S.

7    409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).  Its purpose is "to provide, within constitutional

8    limitations, for fair housing throughout the United States." 42 U.S.C. § 3601.  Under the FHA, it is

9    unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a

10   dwelling to any buyer or renter because of a handicap of . . . that buyer or renter.   42 U.S.C. §

11   3604(f)(1).

12         "[P]rohibited discrimination encompasses 'a refusal to make reasonable accommodations

13   in rules, policies, practices, or services, when such accommodations may be necessary to afford

14   such person equal opportunity to use and enjoy a dwelling.'" *Giebeler v. M & B Assocs.*, 343 F.3d

15   1143, 1146–47 (9th Cir. 2003) (quoting 42 U.S.C. § 3604(f)(3)(B)). "Thus, the [FHA] 'imposes an

16   affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons,'

17   *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir.1994) . . . ,

18   not only with regard to the physical accommodations, *see* 42 U.S.C. § 3604(f)(3)(A) & (C), but

19   also with regard to the administrative policies governing rentals." *Id*.

20         To state a prima facie case of discrimination based on failure to reasonably accommodate,

21   a plaintiff must demonstrate that (1) they suffer from a handicap as defined by the FHA; (2)

22   defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation

23   of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the

24   dwelling; and (4) defendants refused to make such accommodation. *Id.*  (citing *United States v.*

25   *Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir.1997)).  An accommodation is

26   reasonable where it would not require a fundamental alteration in the nature of the housing

27   provider's business or impose on the landlord undue financial or administrative hardship. *Id.* at

28   1157.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any

2    person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on

3    account of his having aided or encouraged any other person in the exercise or enjoyment of, any

4    right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.

5    "'[T]he language "interfere with" has been broadly applied "to reach all practices which have the

6    effect of interfering with the exercise of rights" under the federal fair housing laws.'" *Walker v.*

7    *City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (quoting *Michigan Protection & Advocacy*

8    *Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir.1994) (quoting *United States v. American Inst. of Real*

9    *Estate Appraisers*, 442 F. Supp. 1072, 1079 (N.D.Ill.1977))).  For example, issuance of a notice to

10   quit the premises by a rental owner after a plaintiff requested that she be permitted to keep her

11   service dog in the apartment was found to constitute interference under § 3617 in *Smith v.*

12   *Powdrill*, No. CV 12-06388 DDP RZX, 2013 WL 5786586, at *9 (C.D. Cal. Oct. 28, 2013).  The

13   court reasoned that "[b]y responding to Plaintiff's request for an accommodation for her disability

14   by issuing her a 3–Day Notice, and subsequently reiterating that they wanted Plaintiff out of the

15   apartment if she insisted on keeping the companion animal, Defendants engaged in conduct that

16   would give a person in Plaintiff's position cause to hesitate in seeking to enforce her right to

17   obtain a reasonable accommodation for her disabilities."  *Id.* at *10.  Similarly, in *Castellano v.*

18   *Access Premier Realty, Inc*., the court found that a rental owner interfered under § 3617 when it

19   issued a Notice to Perform Covenant (Cure) or Quit and a Notice of Termination in response to the

20   plaintiff's request that she be permitted to keep a cat in her apartment as a reasonable

21   accommodation. 181 F. Supp. 3d 798, 809 (E.D. Cal. 2016).

22                    **3.  Sufficiency of Allegations of Violation of § 3617**

23        Construing the allegations of Galia's complaint liberally, it is apparent that he has stated a

24   claim for violation of § 3617 under the standards set forth above.

25        The gist of Galia's complaint is that because he is disabled and lives on SSDI payments,

26   which he receives on the second Wednesday of the month, Galia requested that he be permitted to

27   pay his rent after he received his SSDI payment rather than at the beginning of the month as a

28   reasonable accommodation of his disability.  After initially being allowed to pay his rent later in

9

1    the month, Wasatch denied a request for the same accommodation in 2014, and between

2    September 2014 and October 2017, Galia was late on his rent 22 out of 38 months. He alleges that

3    he was "not always charged a late fee because it was at their discretion."[6] Ultimately, Wasatch

4    served a summons and complaint for unlawful detainer and a three-day notice to pay outstanding

5    rent on Galia, and then required Galia to sign the pay-and-vacate Stipulation.  When Galia

6    subsequently asked for an adjustment to the payment dates in the Stipulation to make the first

7    payment on the eighth day of the month rather than the sixth day of the month, Defendant Cortes

8    denied that request as well.

9        These facts are sufficient to state a prima facie case of discrimination based on failure to

10   reasonably accommodate under § 3604(f)(3) of the FHA.  First, Galia has alleged that he suffers

11   from a handicap as defined under the FHA. Complaint ¶ 8.  Second, he alleges facts sufficient to

12   raise an inference that Defendants knew or should have known of his disability, alleging that he

13   specifically asked if he could pay his rent later in the month as a "reasonable accommodation."  *Id.*

14   ¶ 10.  Third, he alleges that his requests for accommodation were denied, both when he asked to

15   pay his rent later in the month in 2014 and when he asked for a modification of the schedule set

16   forth in the Stipulation, in 2017.  Complaint ¶¶ 12, 17.

17       The Court also finds that Galia alleged sufficient facts to show that the accommodation he

18   requested "may be necessary to afford him an equal opportunity to use and enjoy the dwelling."

19   The Ninth Circuit has recognized that "even when a neutral policy's adverse effect on disabled

20   persons is attributable to financial limitations faced by disabled persons in securing housing, the

21   [FHA] may require an exception to the policy as a reasonable accommodation."  *Giebeler*, 343

22   F.3d at 1152 (citing *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806

23   (9th Cir. 1994), aff'd sub nom. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995)).  In

24   *Giebeler*, the plaintiff was disabled and living on SSDI and therefore could not satisfy the income

25

26   ─────────────────────────
     [6] Construing the complaint in the light most favorable to Galia, as the Court is required to do on a
27   Rule 12(b)(6) motion, the Court takes this as an allegation that Galia was sometimes charged a late
     fee for his late payment.  Defendants mischaracterize the complaint in the Motion when they state
28   that it alleges that "Plaintiff was not charged a late fee because it was at Defendants' discretion."
     Motion at 4 (citing Complaint ¶ 14).

United States District Court
Northern District of California

1    means test that the rental owner applied to rental applicants.  *Id.* at 1146.  He asked the rental

2    owner to allow his mother (who did satisfy the income means test) to sign the lease as a co-signer

3    so that he could qualify for the apartment but the rental owner denied the request on the basis of its

4    policy of not allowing such arrangements.  *Id.*  The plaintiff brought a claim under the FHA for

5    failure to provide a reasonable accommodation but it was dismissed on summary judgment on the

6    basis that "an accommodation which remedies the economic status of a disabled person is not an

7    'accommodation' as contemplated by the FHA." *Id.*  The Ninth Circuit reversed, finding that the

8    requested accommodation fell within the ambit of the FHA and rejecting the Second and Seventh

9    Circuit's conclusion that the FHA "does not require landlords . . . to accommodate needs

10   generated by the inability of disabled individuals to generate income by working."  *Id.*  at 1153

11   (citing *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir.1998); *Hemisphere*

12   *Building Co. v. Village of Richton Park*, 171 F.3d 437 (7th Cir.1999)).

13           Here, as in *Giebeler*, Galia has alleged that he is disabled and dependent on SSDI, and that

14   as a consequence he needed an accommodation that would modify the landlord's general policies

15   regarding the day of the month his rent would be due.  These allegations are sufficient to establish

16   a prima facie case of discrimination at the pleading stage of the case.

17           Galia also must allege "interference" with his right to a reasonable accommodation under §

18   3604 in order to state a claim under § 3617.  The Court finds that he has done so by alleging that

19   Defendants served an unlawful detainer complaint and three-day notice to quit upon him and

20   required him to enter into the pay-and-vacate Stipulation.  The complaint alleges sufficient facts to

21   raise a plausible inference that these were at least in part the result of Galia's frequent late

22   payments of his rent and thus were related to Defendants' refusal to modify the payment date in

23   his lease or the Stipulation.  As in *Smith* and *Castellano*, discussed above, this conduct is sufficient

24   to constitute interference.

25           The Court rejects Defendants' assertion based on the documents attached to the complaint

26   that the real reason for Defendants' serving the unlawful detainer action and three-day notice was

27   that Galia owed over $2,000 in unpaid rent.  While the Court can consider these documents under

28   the doctrine of incorporation by reference, they do not conclusively establish that Plaintiff's

United States District Court
Northern District of California

11

1    eviction was unrelated to his repeated late rent payments.   Rather, these challenges involve factual

2    disputes that are more appropriately addressed at a later stage of the case.[7]

3                            **4.   Whether Galia's FHA Claim is Time-Barred**

4          Defendants contend that even if Galia states a claim under 42 U.S.C. § 3617, his claim is

5    barred by the two-year statute of limitations that applies to that claim, which requires an aggrieved

6    person to file their claim "not later than 2 years after the occurrence or the termination of an

7    alleged discriminatory housing practice."   42 U.S.C. § 3613(a)(1)(A).   Defendants are incorrect.

8          The Supreme Court has recognized that a "'continuing violation' of the Fair Housing Act

9    should be treated differently from one discrete act of discrimination."   *Havens Realty Corp. v.*

10   *Coleman*, 455 U.S. 363, 380–81 (1982).   Where a plaintiff "'challenges not just one incident of

11   conduct . . . but an unlawful practice that continues into the limitation period, the complaint is

12   timely when it is filed [within the statutory period, running from] the last asserted occurrence of

13   that practice.'"   *Garcia v. Brockway*, 526 F.3d 456, 461–62 (9th Cir. 2008) (quoting *Havens*

14   *Realty Corp.*, 455 U.S. at 380–81)).   "Congress has since codified this continuing violation

15   doctrine by amending the FHA to include both 'the occurrence [and] *the termination* of an alleged

16   discriminatory housing practice' as events triggering the two-year statute of limitations."   *Id.*

17   (quoting 42 U.S.C. § 3613(a)(1)(A)) (emphasis added in *Garcia*).

18         Here, the unlawful detainer action served on Galia and the pay-and-vacate Stipulation, both

19   of which constitute interference for the purposes of his claim under § 3617, were filed in the same

20   case, HG17880790, in Alameda Superior Court.   *See* Complaint, Exs. B-C.   The culmination of

21

22   [7] The Court also rejects Defendants' reliance on *Egan v. Schmock*, 93 F. Supp. 2d 1090 (N.D. Cal.
23   2000), which they cite for the holding that § 3617 "does not reach conduct that merely interferes
     with [an] individual's enjoyment of" their home as opposed to conduct that is designed to drive an
24   individual out of their home. *See* Motion at 6.   That case is entirely distinguishable as it involved
     claims asserted against a neighbor based on the neighbor's allegedly discriminatory conduct.
25   Thus, the court had to address the "application of § 3617 when the allegedly discriminatory
     conduct is not directly related to the sale or rental of real property."   93 F. Supp. 2d at 1093.   In
26   that context, the Court found that Congress did not intend that the FHA would extend to "any
     discriminatory conduct which interferes with an individual's enjoyment of his or her home[,]"
27   reasoning that such a construction, if adopted would mean that "any dispute between neighbors of
     different races or religions could result in a lawsuit in federal court under the FHA." *Id.*   The
28   concerns expressed in *Egan* have no bearing on this case, which is based on conduct that is
     *directly* related to the rental of real property.

United States District Court
Northern District of California

1   that case was the issuance of the writ of possession, on December 21, 2017. *Id.*, Ex. D.

2   Therefore, the Court concludes that the interference Galia alleges in his complaint terminated no

3   sooner than the date the writ of possession was issued, which occurred within the two-year

4   limitation period.  (As stated above, Galia filed the complaint on December 16, 2019.)

5   Accordingly, the Court rejects Defendants' argument that Galia's FHA claim is time-barred as a

6   matter of law.

7   **IV.    CONCLUSION**

8         For the reasons discussed above, the Motion is DENIED.  Galia, who is not represented by

9   counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center Pro Se

10  Help Desk for assistance as he continues to pursue this case.  Lawyers at the Help Desk can

11  provide basic assistance to parties representing themselves but cannot provide legal representation.

12  In-person appointments are not currently available due to the COVID-19 public health emergency,

13  but Galia may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a

14  telephonic appointment.

15        **IT IS SO ORDERED.**

16

17  Dated:  April 16, 2021

18  _____

19  JOSEPH C. SPERO
    Chief Magistrate Judge

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*

13